# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Gerard L. Cafesjian, et al.,

      Plaintiffs,

v.

Armenian Assembly of America, Inc.,

      Defendant.

Civil No. 07-cv-2079 (JNE/JJG)

**REPORT
AND
RECOMMENDATION**

This is a breach of contract case brought by a benefactor seeking the return of his donations. It is before the Court on the Defendant's Motions to Dismiss based on: 1) lack of personal jurisdiction (Fed. R. Civ. P. 12(b)(2)); 2) improper venue (Rule 12(b)(3)); 3) failure to state a claim (Rule 12(b)(6)); and 4) failure to join a party under Rule 19 (Rule 12(b)(7)).[1] It was referred to this Court pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. *See* Docket No. 17. For the reasons set forth below, the Court recommends dismissal of this matter without prejudice for nonjoinder pursuant to Fed. R. Civ. P. 12(b)(7).

## I.  BACKGROUND

### A.  The Parties

Plaintiff Gerard L. Cafesjian ("Cafesjian") is a World War II veteran, former Minnesota resident, and retired West Publishing executive. Cafesjian now lives in Naples, Florida, and maintains a home in Minnesota. *See Complaint*, ¶ 1; *Affidavit of John J. Waters, Jr.*, ¶ 5.

Cafesjian is a significant contributor to Armenian causes. In 1996, he established the Cafesjian

---

[1]Defendant brought two motions. Its first motion (Doc. No. 11) is based on its failure to state a claim (12(b)(6)) and failure to join (12(b)(7)) arguments. The second motion (Doc. No. 14) is based on its personal jurisdiction (12(b)(2)) and venue (12(b)(3)) arguments.

Family Foundation ("CFF"), also a Plaintiff in this action. *See Waters Aff.*, ¶ 3. The CFF is a Florida non-profit with its principal place of business in Naples, Florida. *Complaint*, ¶ 2. The CFF also has an office in Minneapolis, Minnesota. *Affidavit of Lou Ann Mattosian,* ¶ 1. The CFF is dedicated to the advancement of Armenian causes. *Waters Aff.*, ¶¶ 3, 10.

Defendant Armenian Assembly of America, Inc. (the "Assembly") is a District of Columbia non-profit, with its principal place of business in Washington D.C. *Complaint*, ¶ 3. The Assembly has no offices or employees in Minnesota. *Affidavit of Robert A. Kaloosdian,* ¶ 3.[2] The Assembly describes itself as the foremost Armenian-American advocacy group in the United States. *Id.*, ¶ 4. Its missions include interacting with public policymakers; enhancing relations between the United States and Armenia; and research, education, and advocacy for universal affirmation of the Armenian Genocide. *Id.*[3]

### B.    The Museum Project

In the 1990's the Assembly began exploring the idea of creating a museum dedicated to the victims and survivors of the Armenian Genocide. *Kaloosdian Aff.*, ¶ 5. This required the Assembly to seek substantial donations towards the construction of the museum, and eventually it contacted Cafesjian. *Id.*, ¶ 7. The initial meeting between Cafesjian and the Assembly occurred in 1997 at Cafesjian's Minnesota residence. *Id.*; *Waters Aff.*, ¶ 15.

Cafesjian, CFF, and the Assembly subsequently worked together to develop the museum idea. *Waters Aff.,* ¶ 16. In March 1999, Cafesjian pledged over $1 million to support the Assembly's museum

---

[2]The Kaloosdian Affidavit is attached as Exhibit 1 to the Affidavit of Arnold R. Rosenfeld.

[3]As described by the Armenian National Institute, the Armenian Genocide refers to atrocities committed against Armenians during the government of the Young Turks from 1915 to 1918 in the Ottoman Empire. *See* <http://www.armenian-genocide.org/genocidefaq.html>.

endowment campaign. *Id.*, ¶ 18.

In 2000, the Assembly identified a historic location in Washington D.C., the National Bank of Washington Building located near the nation's Capitol, as a possible site for the museum. *Kaloosdian Aff.*, ¶ 8. Cafesjian contributed $3,500,000 to the Assembly to help purchase the building and loaned an additional $500,000 to assist with the purchase. *Waters Aff.*, ¶ 19. The $500,000 loan was evidenced by a promissory note executed by the Assembly in favor of CFF. *Complaint*, Ex. A.

Cafesjian and CFF then became increasingly more involved in the museum's development. Cafesjian purchased four additional parcels of property adjacent to the National Bank site to expand the project. *Kaloosdian Aff.*, ¶ 10. He also made additional donations to the museum project. All told, Cafesjian's donations to the project totaled more than $14 million. *Complaint*, ¶ 12.

Some of Cafesjian's contributions are encompassed by a November 1, 2003 Grant Agreement between the Assembly, Cafesjian, and the CFF. *Complaint*, Ex. B.

## C.    Armenian Genocide Museum and Memorial, Inc.

Cafesjian's interest in the museum project did not end with his donations. Eventually he requested the organization of a new entity dedicated to the development and construction of the museum. Thus, the Armenian Genocide Museum and Memorial, Inc. ("AGM&M") was born as a D.C. nonprofit corporation. *Kaloosdian Aff.*, ¶¶ 10-11. Cafesjian was one of the trustees of the new corporation. *Id.*

On November 1, 2003, the same date the Grant Agreement between Cafesjian, CFF, and the Assembly was executed, a Transfer Agreement was executed between the Assembly and AGM&M for the purpose of transferring the Assembly's assets with respect to the museum project to the AGM&M. *Rosenfeld Aff.*, Ex. 4.

3

**D.      The Legal Agreements**

Three legal documents underpin the parties' obligations in this case: 1) the March 17, 2000 Promissory Note between CFF and the Assembly; 2) the November 1, 2003 Grant Agreement between Cafesjian, CFF, and the Assembly; and 3) the November 1, 2003 Transfer Agreement between AGM&M and the Assembly.

**1.      The Promissory Note**

The March 17, 2000 Promissory Note between CFF and the Assembly states that it shall be payable in full on May 16, 2000, just two months after it was executed.  *Complaint*, Ex. A.  It contains a Minnesota forum selection clause stating:

> At the option of the payee [CFF], this note may be enforced in any federal court or Minnesota state court sitting in Hennepin County, Minnesota, and the maker [Assembly] consents to the jurisdiction and venue of any such court and waives any argument that the venue in such forums is not convenient.  If the maker [Assembly] commences any action in another jurisdiction or venue under any tort or contract theory arising directly or indirectly from the relationship created by this note, the payee [CFF] at its option shall be entitled to have the case transferred to one of the jurisdictions and venues above described, or, if such transfer cannot be accomplished under applicable law, to have such case dismissed without prejudice.

*Id.* (original in allcaps).

**2.      The Grant Agreement**

The November 1, 2003 Grant Agreement between Cafesjian, CFF, and the Assembly states that it governs various donations Cafesjian and CFF made to the Assembly.  It specifically addresses the Promissory Note between CFF and the Assembly, stating:

4

5.4    Promissory Note.

(A)    The Assembly must issue a new promissory note (the "Promissory Note") to replace the promissory note issued on March 17, 2000 by the Assembly in favor of the Foundation in the amount of $500,000.

(B)    The new note must be interest free and mature on December 31, 2005.

(C)    If the Promissory Note is still outstanding at the time the Transfer Agreement is executed, it must be transferred to the AGM&M, Inc. as part of the transfer of the Assembly's assets.

*Complaint*, Ex. B, p. 7.

The Grant Agreement references the Transfer Agreement, stating, inter alia:

On or before November 1, 2003, the Assembly shall have entered into a pledge agreement with AGM&M, Inc. (the "Transfer Agreement"), under the terms of which the Assembly shall transfer to AGM&M, Inc. all of its right, title and interest in and to all cash, pledges, real property, tangible property, intangible property, and other assets contributed to the Assembly and/or held by the Assembly for the development, renovation, and construction of the AGM&M.

*Id.*

The Grant Agreement contains a choice of law provision stating:

7.2    Governing Law.    This Agreement must be governed by and construed in accordance with the laws of the District of Columbia (the "District") applicable to contracts to be fully performed within the District, without reference to the District's choice-of-law rules.

*Rosenfeld Aff.*, Ex. 5, p. 9.[4]

### 3.    The Transfer Agreement

The November 1, 2003 Transfer Agreement between AGM&M and the Assembly (but not

---

[4]The Grant Agreement attached to the Complaint is missing pages 9 and 10.  The complete Grant Agreement can be found at Rosenfeld Affidavit, Exhibit 5.

Cafesjian or CFF) generally requires the Assembly to transfer its assets held for the development and

construction of the museum to AGM&M.

With regard to the March 17, 2000 Promissory Note between CFF and the Assembly, the

Transfer Agreement states:

> If at the time this Agreement is executed the promissory note executed by Grantor [the
> Assembly] in favor of The Cafesjian Family Foundation on March 17, 2000 in the amount
> of $500,000 (the "Promissory Note") or any promissory note issued to replace the
> Promissory Note (the "Replacement Promissory Note") is still outstanding, the Promissory
> Note or the Replacement Promissory Note, whichever is still outstanding, shall be
> transferred to AGM&M, Inc. as part of the Grant.

*Rosenfeld Aff.*, Ex. 4, p. 2.

The Transfer Agreement contains a District of Columbia choice of law provision identical to the

one in the Grant Agreement. *Id.*, p. 6.

It also contains an arbitration provision stating:

> 5.3   <u>Dispute Resolution</u>.  Any disputes arising under this Agreement must be settled
> exclusively by binding arbitration in Washington, D.C. in accordance with the
> Commercial Arbitration Rules of the American Arbitration Association then in
> force.

*Id.*

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(2) - Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima

facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms.*

*(PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir.1996). When considering whether personal jurisdiction exists, the

court may consider matters outside the pleadings. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir.1998)

(quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)) ("the court may inquire, by affidavits or otherwise, into the facts as they exist"). When determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the Court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in her favor. *See Digi-Tel*, 89 F.3d at 522.

### B.      Rule 12(b)(6) - Failure to State a Claim

When considering a Rule 12(b)(6) motion, the Court assumes all facts alleged in the complaint as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996), *cert. denied*, 519 U.S. 1149 (1997). While the complaint need not contain "detailed factual allegations," *see* Fed R. Civ. P. 8(a)(2), it must supply "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007) (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge ... claims across the line from conceivable to plausible." *Id.* at 1974. While the complaint's factual allegations must, therefore, rise above speculation and suspicion, a court should not dismiss for failure to state a claim merely because it disbelieves those allegations or considers them doubtful. *Id.* at 1965.

### C.      Rule 12(b)(7) - Failure to Join a Rule 19 Party

In analyzing a Rule 12(b)(7) motion to dismiss for failure to join a party under Rule 19, courts accept as true all of the pleader's well-pleaded factual allegations and draw all reasonable inferences in her favor. *See* Baicker-McKee, Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK, Rule 12(b)(7), p. 381 (2007) (citation omitted). The court may rely on affidavits and other evidence outside the pleadings in making its determination. Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1359, vol.

5C, p. 68 (2004) ("The district judge is not limited to the pleadings.") (citing *Young v. Garrett*, 149 F.2d 223, 225 n.1 (8th Cir. 1945); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001)) (other citations omitted).

## III.   ANALYSIS

The Assembly asserts a raft of Rule 12 legal arguments in support of dismissal. As further discussed below, only the Rule 12(b)(7) failure to join a party argument survives.

### A.   Personal Jurisdiction (Rule 12(b)(2))

The Assembly argues under Fed. R. Civ. P. 12(b)(2) that the Court lacks personal jurisdiction over it, a non-profit incorporated under the laws of, and with its principal place of business in, the District of Columbia.

#### 1.   Promissory note forum selection clause

Cafesjian maintains that the Minnesota forum selection clause contained in the promissory note between CFF and the Assembly evidences the Assembly's consent to Minnesota jurisdiction. A party's valid consent to jurisdiction obviates the need to engage in further personal jurisdiction analysis. *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001); *ELA Med., Inc. v. Arrhythmia Mgmt. Assocs, Inc.*, No. 06-3580 (JNE/SRN), 2007 WL 892517, *3 (D. Minn. Mar. 21, 2007).

While the Minnesota forum selection clause clearly reflects the Assembly's consent to Minnesota jurisdiction for a suit enforcing the promissory note, this is not such a suit. The Complaint seeks redress for breach of the Grant Agreement, not the promissory note. While the Complaint references the promissory note, both of its two counts are expressly predicated on breach of the Grant Agreement. Specifically, Cafesjian and CFF allege that the Assembly breached the Grant Agreement, not the

promissory note, by failing to issue a replacement promissory note as the Grant Agreement requires. *See Complaint*, ¶¶ 16-18, 22 ("The November 1, 2003 Grant Agreement obligated the Assembly to issue a new promissory note.... The Assembly has yet to issue the replacement note.  This non-performance materially breached the Grant Agreement.") ("The Assembly violated this implied duty of good faith and fair dealing by failing to issue a replacement promissory note to Cafesjian.").

The Grant Agreement contains no forum selection clause, but only a choice of law (District of Columbia) clause.  Because this is not a suit to enforce the note, the note's forum selection clause does not apply.  *Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (following "cardinal rule" of contract interpretation that contract's plain language must be given its ordinary meaning to find forum selection clause inapplicable).

Cafesjian argues that this action is, minimally, indirectly related to the promissory note, triggering language in the note's forum selection clause stating that actions "arising directly or indirectly from the relationship created by this note," are encompassed by the clause.  However, Cafesjian's selective parsing of the clause's language is unpersuasive.  A full reading of the clause indicates that it is triggered only when the note's *maker* (the Assembly) commences action.  It states:

> If the *maker* [Assembly] commences action in another jurisdiction or venue under any tort or contract theory arising directly or indirectly from the relationship created by this note, the payee [CFF] at its option shall be entitled to have the case transferred to one of the jurisdictions or venues above described....

*Complaint*, Ex. A (emphasis added).  This is not an action by the note's maker.  This language is,

therefore, inapplicable.[5]

### 2.   **Minimum contacts**

Cafesjian argues that Assembly has subjected itself to both specific and general Minnesota personal jurisdiction by visiting Minnesota, soliciting donations in Minnesota, and recruiting and maintaining Minnesota members.

Cafesjian's allegations do not support the exercise of specific personal jurisdiction, even when viewed in a light most favorable to him. The Grant Agreement, the Complaint's basis, has at its core property and donations located in Washington D.C. *Complaint*, Ex. B.[6] The museum that was the goal of the Grant Agreement was to be located in Washington D.C. *Id.* The Grant Agreement is expressly controlled by District of Columbia law. *Id.*, p. 9. Assembly is a District of Columbia resident. *Id.*, ¶ 3. Cafesjian is a Florida resident and CFF's primary place of business is in Florida. *Complaint*, ¶¶ 1, 2. The Court, therefore, finds little, if any, Minnesota connection to the Grant Agreement underlying this lawsuit.

Although the parties first met in Minnesota, and Cafesjian vaguely states through Mr. Waters' Affidavit that some of his pledge activity was "orchestrated from the Foundation's Minnesota office,"

---

[5]The Court recognizes the disharmony between allowing Minnesota jurisdiction where Assembly commences suit in another jurisdiction arising indirectly from the note and disallowing Minnesota jurisdiction where CFF brings an action arising indirectly from the note. This, however, is how the parties struck their bargain, and the Court must hold them to it. Moreover, it is possible that Cafesjian opted not to sue directly on the note, which matured in May 2000, because of statute of limitations concerns. Any such strategic choice does not entitle him to the benefit of the forum selection clause in an agreement he is not suing to enforce.

[6]Assembly states that the Grant Agreement was also executed in the District of Columbia. *Memorandum of Points and Authorities in Support of Defendant the Armenian Assembly of America's Motion To Dismiss for Lack of Personal Jurisdiction and Improper Venue*, p. 17. It does not, however, support this statement with affidavit testimony, so the Court has not relied on it in its personal jurisdiction analysis.

*Waters Aff.*, ¶ 18, the record contains no detail regarding any Minnesota connection to the pledges underlying the Grant Agreement. Cafesjian, therefore, has not shown a prima facie case of sufficient Minnesota contact with respect to the transactions at issue in the Complaint. *See Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir.), *cert. denied*, 127 S. Ct. 217 (2006) (party cannot establish prima facie case of personal jurisdiction through conclusory allegations).

The existence of general personal jurisdiction over the Assembly is a closer question. Assembly members traveled to Minnesota on numerous occasions to solicit funds, Assembly has Minnesota members and volunteers, and Assembly targets Minnesotans for solicitations. *See Matossian Aff.*, ¶¶ 4, 5, 6, 8; *Waters Aff.*, ¶¶ 10, 11, 15. Cafesjian's affidavits regarding this activity are not particularly detailed. For example, the Court does not know how many visits Assembly members made to Minnesota, the percentage of its members that are Minnesotans, how often and in what way it solicits Minnesota members, and whether it has held fund-raising events in Minnesota. However, given that all doubts must be resolved in Cafesjian's favor in this procedural posture, the Court finds that he has made a prima facie case of general personal jurisdiction over Assembly. *See Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (exercise of personal jurisdiction appropriate where foreign nonprofit conducted fund-raising and held two fund-raising events in forum state); *Brown v. 1995 Tenet ParaAmerica Bicycle Challenge*, 931 F. Supp. 592, 595-595 (N.D. Ill. 1996) (exercising personal jurisdiction over foreign nonprofits based, in part, on fund-raising activities in forum state).

**B.     Venue (Rule 12(b)(3))**

Assembly also moves to dismiss for improper venue under 28 U.S.C. § 1391. If personal jurisdiction exists at the commencement of an action, venue is proper under Section 1391. 28 U.S.C. §

1391(c).    Because Cafesjian has made a prima facie showing of personal jurisdiction, venue is proper in

Minnesota.  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1392 (8th Cir. 1991)

(where prima facie showing of Minnesota personal jurisdiction made, venue proper in Minnesota);

*Raymedica, Inc. v. Stoy*, Civ. No. 01-1841 (JRT/FLN), 2002 WL 31185916, *6 (D. Minn. Sep. 30,

2002) (same).

### C.    Failure to State a Claim (Rule 12(b)(6))

Assembly makes three arguments that Cafesjian's suit should be dismissed for failure to state a

claim upon which relief can be granted.  None of them warrants dismissal.

#### 1.    Arbitration clause

Assembly asserts that the Transfer Agreement's arbitration clause requires that this dispute be

arbitrated, rather than litigated.

As a threshold matter, a Rule 12(b)(6) analysis is confined to the pleadings, materials embraced

by the Complaint or exhibits thereto, matters of public record, and orders.  *Porous Media Corp. v. Pall

Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  The Transfer Agreement is none of these things.  The

Complaint is based on the Grant Agreement, references the promissory note, and attaches both as exhibits.

It is not, however, based on, nor does it mention or attach, the Transfer Agreement.  The Court, therefore,

cannot interpret the Transfer Agreement's provisions, including its arbitration clause,  in this procedural

posture.  *Id.*

Even if the Court could consider the merits of the arbitration clause's applicability, it would not

warrant dismissal.  Cafesjian and CFF are not parties to the Transfer Agreement, which is between

Assembly and the AGM&M.  Additionally, the Transfer Agreement's arbitration clause expressly states

12

that it governs "disputes arising under this Agreement." Cafesjian's suit arises under the Grant Agreement, not the Transfer Agreement. This makes sense, as Cafesjian is a not a party to it.

Although arbitration of disputes is generally favored, a party who is not a signatory to an arbitration agreement cannot be compelled to arbitrate. *Air Line Pilots Assoc. v. Miller*, 523 U.S. 866, 876 (1998); *Nitro Dist., Inc. v. Alticor, Inc.* 453 F.3d 995, 999 (8th Cir. 2006); *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 28 (D.D.C. 2002). *See also Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999) ("[A]rbitration is a matter of consent, not of coercion."). Cafesjian and CFF are not parties to the Transfer Agreement, and, therefore, cannot be forced to arbitrate under its terms.[7]

### 2.    Statute of limitations

Assembly also seeks a ruling that Cafesjian's suit is time-barred. It argues that Cafesjian's cause of action seeking issuance of a replacement promissory note accrued on or before November 1, 2003. It reasons that the Grant Agreement required Assembly to issue a replacement note before the execution of the Transfer Agreement on November 1, 2003. Using this date, Assembly argues the action is time-barred under the applicable District of Columbia statute of limitations. *See* D.C. Stat. § 12-301(7) (actions on a "simple contract" must be brought within three years).[8]

---

[7]Assembly's argument that the Grant Agreement incorporates the terms of the Transfer Agreement by reference is unpersuasive. Although the Grant Agreement references the Transfer Agreement, it does not expressly incorporate it by reference. *See Jenisio v. Ozark Airlines, Inc.*, 187 F.3d 970, 973 (8th Cir. 1999) (merely mentioning another agreement does not constitute incorporation by reference); *Air Line Pilots Assoc., Int'l v. Delta Air Lines, Inc.*, 863 F.2d 87, 94 (D.C. Cir. 1988) (same).

[8]The parties agreed in the Grant Agreement that District of Columbia law governs the interpretation of that Agreement, and it is, therefore, appropriate to apply that law. *See Schwan's Sales Enterprises., Inc. v. SIG Pack, Inc.,* 476 F.3d 594, 596 (8th Cir. 2007) ("Minnesota courts generally recognize and apply choice-of-law clauses in contracts requiring the application of a foreign state's law.").

This argument fails.  The Grant Agreement did not require the replacement note to be issued on or before November 1, 2003.  Rather, it does not specify a date for the issuance of the replacement note.  Thus, a fact issue exists regarding when the cause of action accrued making dismissal inappropriate at this early stage.  *See R.A. Weaver and Assoc., Inc. v. Haas and Haynie Corp.*, 663 F.2d 168, 175-76, n.57 (D.C. Cir. 1980); *Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 770-71 (D.C. 1998).

The Assembly also argues that any action to enforce the promissory note is time-barred.  The Court need not reach this argument as this action is one to enforce the Grant Agreement, not the note.

### 3.   <u>Merits</u>

The Assembly seeks dismissal of Cafesjian's Complaint on the merits based on its argument that the Transfer Agreement transferred the promissory note to AGM&M, discharging the Assembly's obligation under the Grant Agreement to issue a replacement note.   Resolution of this argument is premature.

The Grant Agreement requires the Assembly to issue a "new promissory note (the *"Promissory Note"*) to replace the promissory note issued on March 17, 2000 by the Assembly in favor of the Foundation in the amount of $500,000."  *Complaint*, Ex. B, p. 7.  (emphasis added).   The Grant Agreement then addresses only the transfer of any new promissory note, not the original note, stating: "If the *Promissory Note* [i.e. the new promissory note] is still outstanding at the time the Transfer Agreement is executed, it must be transferred to AGM&M, Inc. as part of the transfer of the Assembly's assets." *Id.*

Thus, the Grant Agreement indicates only that any *new* promissory note was subject to transfer via the Transfer Agreement.   Since Assembly never issued a new note, no note could have transferred to AGM&M under the Grant Agreement's plain language.

14

The Transfer Agreement, unlike the Grant Agreement, clearly states that either the original note or a new note would transfer:

> If at the time this Agreement is executed the promissory note executed by Grantor in favor of the Cafesjian Family Foundation on March 17, 2000 in the amount of $500,000 (the "Promissory Note") or any promissory note issued to replace the Promissory Note (the "Replacement Promissory Note") is still outstanding, the Promissory Note or the Replacement Promissory Note, whichever is still outstanding, shall be transferred to AGM&M, Inc. as part of the Grant.

*Rosenberg Aff.*, Ex. 4, p. 2. Thus, the Grant Agreement and the Transfer Agreement are at odds with respect to the transfer of the original promissory note.

Reconciliation of the ambiguities created by these two contracts is inappropriate at this early juncture. *E.g., Bennett Enterprises, Inc. v. Domino's Pizza, Inc*., 794 F. Supp. 434, 435 (D.D.C. 1993); *Swift & Co. v. Elias Farms*, Civil Nos. 05-2775, 05-2776, 05-2777 (PAM/JJG),  2007 WL 1364691, *7 (D. Minn. May 9, 2007) (slip op.) (citing *Housing and Redev. Auth. of Chisholm v. Norman*, 696 N.W.2d 329, 337 (Minn. 2005); *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn. 1990)).  This is particularly so because the Transfer Agreement is not even embraced by the four corners of the Complaint, and is thus not properly considered on this motion.

### D.    Failure to Join a Party Under Rule 19 (Rule 12(b)(7))

Assembly argues that the lawsuit should be dismissed because Cafesjian failed to join AGM&M, a necessary party under Rule 19.  It further argues that because AGM&M is not subject to personal jurisdiction in Minnesota, this suit should be dismissed without prejudice.

Rule 19 provides the relevant framework for analyzing a Rule 12(b)(7) motion to dismiss.  Rule 19(a) asks two questions: 1) whether joinder of the absent party is required; and, if so; 2) whether the party

is subject to service of process and can be joined without defeating the court's jurisdiction.

### 1.    Whether joinder is required

Rule 19(a) sets forth the factors to be considered in determining whether an absent party's presence is required, stating:

> **Persons to be joined if feasible.**  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

AGM&M's joinder is required under Rule 19(a) because, in its absence, complete relief cannot be accorded among those already parties.  Cafesjian seeks "[r]escission of the Grant Agreement and restitution of all donations made pursuant to that agreement." *Complaint*, ¶ 27.  In other words, he wants the money he donated returned.  Pursuant to the Transfer Agreement, AGM&M now possesses that money. *Kaloosdian Aff.*, ¶ 14.  The Court cannot order the complete relief Cafesjian seeks, therefore, without AGM&M in the litigation.

Persons or entities such as AGM&M that possess disputed fruits of a contract must be joined under Rule 19(a).  For example, in *Denkmann Associates v. International Paper Co.*, 132 F.R.D. 168, 172 (M.D. La. 1990), the court held that complete relief could not be provided to the parties before the court where the plaintiff sought contract rescission which included restoration of timberland owned by a non-party.  Similarly, in *In re U.S. ex rel. Hall*, 825 F. Supp. 1422, 1429-1430 (D. Minn. 1993), the court dismissed an Indian tribe action seeking rescission of a contract with outside vendors where non-party

Indian tribes could not be joined. The court stated, "No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." (quotation omitted). *Id.* at 1430.

This case differs from contract cases where courts have held that an entity that is not a party to a contract underlying the litigation, but is merely affected by it, need not be joined under Rule 19. Although the absent parties in such cases were impacted by the litigation, they did not possess property or money directly implicated by the litigated contract as AGM&M does here. *See e.g., Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816, 819-820 (8th Cir. 1977); *Davis Cos.,* 268 F.3d at 484.

If Cafesjian's suit sought only to force Assembly to execute a replacement promissory note, rather than rescission of his donations, a different Rule 19(a) determination may have been warranted. Arguably that type of a suit would affect AGM&M, but not require its presence. Here, however, where AGM&M actually holds the money Cafesjian seeks, the suit cannot go forward without it.

## 2. <u>Personal and subject matter jurisdiction</u>

Because AGM&M should be part of the action, the Court can order its joinder if it is subject to service of process and if its presence will not defeat the Court's subject matter jurisdiction. Fed. R. Civ. P. 19(a). This Court's diversity jurisdiction would not be defeated by AGM&M's joinder. It is a District of Columbia corporation with its principal place of business in Washington D.C. As such, its presence in the suit as a defendant would not defeat complete diversity, and the parties do not argue otherwise.

The parties do, however, dispute whether AGM&M is subject to personal jurisdiction in Minnesota. Assembly argues that AGM&M, a District of Columbia corporation, has no significant ties to

17

Minnesota and that the donations and museum activities giving rise to the Complaint all took place in Washington D.C. Cafesjian responds that John Waters, an AGM&M Trustee, lives in Minnesota and transacted some of AGM&M's business from Minnesota.

While Waters lives in and sometimes transacts business from Minnesota, the record does not reflect that the transactions at issue in the Complaint, i.e. the alleged breach of the Grant Agreement by failure to issue a replacement promissory note, took place here such that the exercise of specific jurisdiction is appropriate. The record does not reflect that Waters was connected in any way to the Grant Agreement or Assembly's alleged failure to abide by it.

Waters' performance of some of AGM&M's work from his Minnesota home does not confer general personal jurisdiction. An agent's decision to work from home in the forum state generally does not bind an entity to personal jurisdiction in that state where the purpose of the arrangement is merely for the agent's personal convenience. *See Lucachick v. NDS Americas, Inc.*, 169 F. Supp. 2d 1103, 1107 (D. Minn. 2001) (holding that personal jurisdiction in Minnesota was lacking where Minnesota home office was employee's "personal choice"); *Adams v. Riverview Healthcare Ass'n*, No. A3-02-135, 2003 WL 1456442, *3 (D.N.D. March 17, 2003) (employee's personal choice to work from home insufficient basis for assertion of personal jurisdiction).

Moreover, unlike Assembly, the record does not reflect any AGM&M fundraising or membership activity occurring in Minnesota. Thus, the basis for finding a prima facie case of general personal jurisdiction over Assembly is simply not present with AGM&M.

Minnesota does not have a strong interest in providing a forum here. *See Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 694 (8th Cir. 2003) (discussing five-factor personal jurisdiction test,

including the fourth factor, the interest of the forum state in providing relief for its residents). The parties seeking the forum, Cafesjian and CFF, are both Florida residents. Additionally, it does not appear to be particularly convenient for anyone else involved in the litigation, many, if not most, of whom are in Washington, D.C. *See id.* (also discussing fifth factor in personal jurisdiction analysis, the convenience of the parties).

The Court, therefore, concludes that Cafesjian has not made a prima facie showing of personal jurisdiction over AGM&M, precluding its joinder under Rule 19(a).

### 3.   Whether this action should proceed without AGM&M

Because the Court has determined that AGM&M cannot be joined, Rule 19(b) requires an analysis of whether the litigation can continue in its absence. Four factors are relevant to this analysis: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; and fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

Application of these factors here dictates dismissal of this action for AGM&M's nonjoinder. AGM&M holds the money underlying this dispute. The relief Cafesjian seeks cannot be ordered without AGM&M in the lawsuit. A judgment cannot be shaped to lessen this prejudice. Moreover, Cafesjian can bring this suit elsewhere, as dismissal is without prejudice. The Court is aware that CFF has already filed suit in the United States District Court for the District of Columbia against Assembly and AGM&M based on the same relationships at issue here. *See Cafesjian Family Foundation, Inc. v. Armenian Genocide*

19

*Museum and Memorial, Inc., et al.*, 1:07-cv-01746-RWR (D.D.C. filed Sep. 28, 2007).  Moreover, AGM&M has filed its own District of Columbia suit against CFF also arising out of the same issues present here.  *See Armenian Genocide  Museum and Memorial, Inc. v. Cafesjian Family Foundation, Inc.*, 1:07-cv-1259-CKK (D.D.C. filed July 16, 2007).  Cafesjian's ability to seek a remedy in another forum, therefore, is not foreclosed by this Court's recommendation that the action be dismissed without prejudice for nonjoinder.

## IV.   CONCLUSION

Cafesjian and CFF bring this action seeking the return of money originally donated to the Assembly and later transferred to AGM&M.  Because AGM&M holds the money the Plaintiffs seek, this action cannot go forward without it.  AGM&M is not subject to personal jurisdiction in Minnesota.  The Court, therefore, recommends dismissal of this action without prejudice for nonjoinder pursuant to Fed. R. Civ. P. 12(b)(7).

## V.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

    A.    Assembly's Motion to Dismiss based on lack of personal jurisdiction (Rule 12(b)(2)) and improper venue (Rule 12(b)(3)) (Doc. No. 14) be DENIED.

    B.    Assembly's Motion to Dismiss based on failure to state a claim (Rule 12(b)(6)) and failure to join a party under Fed. R. Civ. P. 19 (Rule 12(b)(7)) (Doc. No. 11) be DENIED IN PART as to the portion of its motion based on Rule 12(b)(6) and GRANTED IN PART as to the portion of its motion based on Rule 12(b)(7).

20

      C.       This action be DISMISSED WITHOUT PREJUDICE.

Dated this 23rd day of October 2007.

                                        s/ Jeanne J. Graham

                                        _____

                                        JEANNE J. GRAHAM
                                        United States Magistrate Judge

## NOTICE

        Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **November 5, 2007**.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties stipulate that the District Court is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.